UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RALPH BUCKLEY, JR.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>Defendant. | CASE NO. C09-1346-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Ralph Buckley, Jr., appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34. For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1965 and was 43 years old on the date of the Appeals Council's decision. (Administrative Record ("AR") at 523.) He completed the tenth grade and obtained a general equivalency degree ("GED") in 1981. (AR 95, 106, 594.) His past work

experience includes employment as a cleaner, ticket taker, and usher. (AR 23, 557, 566-67, 601-602.)

On February 14, 2005, plaintiff filed applications for SSI payments and Disability Insurance Benefits ("DIB").[1] (AR 91-93, 523-26.) He alleges that he became disabled on February 24, 2005, due to bipolar disorder, hepatitis B and C, and substance abuse. (AR 101, 546.) The Commissioner denied plaintiff's claim initially and on reconsideration. (AR 529-32, 533-34.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which took place on November 6, 2007. (AR 80, 543-79.) The ALJ heard testimony from the plaintiff and vocational expert Meryl Cohen. (AR 543-79.) On May 30, 2008, the ALJ issued a decision finding the plaintiff not disabled. (AR 41-49.) On October 23, 2008, the Appeals Council reversed and remanded the case to the ALJ for further administrative proceedings. (AR 34-37.)

Pursuant to the Appeals Council's order, the ALJ held another hearing on December 30, 2008, and heard testimony from the plaintiff and vocational expert Olaf R. Elofson, Ph.D. (AR 580-615.) On April 28, 2009, the ALJ issued another decision finding the plaintiff not disabled. (AR 20-32.) On June 15, 2009, the Appeals Council granted plaintiff's request for review and on July 27, 2009, issued a decision finding the plaintiff not disabled within the meaning of the Act. (AR 10-14, AR 535-38.) The Appeals Council's decision became the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On

1 Plaintiff's date last insured for DIB was September 30, 2002. (AR 22, 87.) At the hearing held on November 6, 2007, plaintiff amended his alleged onset date of disability from November 1, 1994, to February 24, 2005, making him ineligible for DIB. (AR 546.) As a result, plaintiff's application for DIB was dismissed. (AR 20, 41.) Plaintiff does not challenge the dismissal of his application for DIB. (Dkt. 11 at 2 n.1.)

September 22, 2009, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. No. 1.)

II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)(*citing Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)(noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The Appeals Council found plaintiff has not engaged in substantial gainful activity since February 24, 2005, the alleged onset date. (AR 12.) At step two, it must be determined whether the claimant suffers from a severe impairment. The Appeals Council found plaintiff has the following severe impairments: bipolar disorder and hepatitis C. (AR 13.) Step three asks whether the claimant's impairments meet or equal a listed impairment. The Appeals Council found plaintiff did not have an impairment or combination of impairments that meet or equal a listed impairment. (AR 13.) If the claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The Appeals Council found plaintiff has the RFC to perform a reduced range of work at the medium exertional level, but must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and operational hazardous equipment and machinery. (AR 13.) In addition, the

Appeals Council found plaintiff is limited to work that requires no more than superficial contact with co-workers, supervisors, and the general public. *Id.* The Appeals Council concluded that plaintiff has no past relevant work. (AR 13.) If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The Appeals Council found there are a significant number of jobs in the national economy which plaintiff could perform, such as janitor and newspaper inserter. (AR 13.) Accordingly, the Appeals Council concluded that plaintiff is not disabled. (AR 13.)

This Court's review of the Commissioner's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes*, 881 F.2d at 750. If there is more than one rational interpretation, one of which supports the Commissioner's decision, the Court must uphold that decision. *Thomas*, 278 F.3d at 954. Plaintiff argues that the Commissioner erred by (1) failing to meet his burden of production at step five; and (2) improperly evaluating the opinions of treating physician Lester Pittle, M.D., treating counselor John Shriner, MSW, MHP, and treating counselor W. Jaime Moss, LMHC, CDP. (Dkt. No. 11.) He requests remand for further administrative proceedings. *Id.* at 25.

The Commissioner argues that the Appeals Council's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 12.) For the reasons described below, the Court agrees with the plaintiff.

A. Step Five Analysis

After a claimant has demonstrated that he has a severe impairment that prevents him from doing his past relevant work, he has made a *prima facie* showing of disability. *Tackett*, 180 F.3d at 1100-01. The burden then shifts to the Commissioner at step five to demonstrate that, in light of the claimants RFC, age, education and work experience, he can perform other types of work that exist in "significant numbers" in the national economy. *Id.*; 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

There are two ways that the Commissioner can make such a showing: (1) through the testimony of a vocational expert, and (2) by reference to the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("Guidelines"). The Guidelines are essentially a matrix that categorizes work by exertional level (sedentary, light, or medium). They also contain various factors relevant to a claimant's ability to find work, including age, education, and work experience. For each combination of factors, the Guidelines direct a finding of either "disabled" or "not disabled."

The Commissioner may use the Guidelines when they "completely and accurately represent the claimant's limitations." *Tackett*, 180 F.3d at 1101; *Reddick v. Chater*, 157 F.3d 715, 725, 729 (9th Cir. 1998). In other words, to rely on the Guidelines, the claimant must be able to perform the full range of jobs within the exertional category they cover. *Tackett*, 180 F.3d at 1101. When the Guidelines fail to accurately describe a claimant's limitations,

however, the ALJ should not rely on them. *Reddick*, 157 F.3d at 729. Because non-exertional limitations are not a factor integrated into the Guidelines, an ALJ must carefully determine if a claimant's non-exertional impairments are sufficiently severe to preclude their use. *Tackett*, 180 F.3d at 1102; *Reddick*, 157 F.3d at 729.

"[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers v. Sec'y of Health & Human Serv.*, 846 F.2d 573, 577 (9th Cir. 1988). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14. For example, in *Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007), the Ninth Circuit found that substantial evidence supported the ALJ's conclusion that a claimant's depression, with evidence of various associated moderate limitations, was not a sufficiently severe non-exertional limitation prohibiting reliance on the grids without the assistance of a vocational expert. By contrast, in *Tackett*, 180 F.3d at 1103-04, the Ninth Circuit found that a claimant's "need to shift, stand up, or walk around every 30 minutes [was] a significant non-exertional limitation not contemplated by the grids[]" and, therefore, that "mechanical application of the grids was inappropriate."

When the Guidelines do not accurately reflect the claimant's non-exertional impairments, he can use them as a framework in conjunction with a vocational expert. *Tackett*, 180 F.3d at 1101. In this alternative, the ALJ uses the Guidelines' principles but has the vocational expert testify as to the claimant's ability to work and the availability of certain jobs that the claimant would be able to perform. *Tackett*, 180 F.3d at 1101. "Whenever a

vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." SSR 83-14 and 83-12. In this case, the Appeals Council determined that plaintiff could perform less than the full range of medium work. (AR 13.) Specifically, the Appeals Council found that plaintiff (1) must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, (2) must avoid operational hazardous equipment and machinery, and (3) is limited to no more than superficial contact with co-workers, supervisors, and the general public. *Id.* In a case such as this, the Commissioner must determine whether the additional limitations on plaintiff's ability to perform the full range of the medium exertional level narrow the range of available jobs so that the grids no longer fairly represent the occupational base for a worker with the plaintiff's RFC. *See Desrosiers*, 846 F.2d at 577 (holding that "[t]he ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.").

      Here, the Appeals Council used the Guidelines as a framework in finding the plaintiff not disabled at step five:

> If the claimant had the capacity to perform the full range of the medium exertional level, 20 CFR 416.99 and Rule 203.28, Table No. 3 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of "not disabled." Although the claimant's exertional and nonexertional impairments do not allow him to perform the full range of the medium exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy which he could perform. At the hearing held on December 30, 2008, an impartial vocational expert testified that an individual with the claimant's age, education, work experience, and residual

> functional capacity could perform the jobs of janitor (DOT # 381.687-018) and newspaper inserter (DOT # 794.687-058). A finding of "not disabled" is therefore appropriate under the framework of the above cited rule.

(AR 13.)

Plaintiff argues that the Appeals Council failed to meet its burden of production at step five when it relied on the vocational expert's testimony to determine that plaintiff could perform work as a janitor and newspaper inserter without providing any statement regarding the availability of such work. (Dkt. No. 11 at 5-6; Dkt. No. 13 at 2-7.) Plaintiff contends that because the Appeals Council did not indicate how many of these jobs exist, the burden of production has not been met. *Id.*

The Commissioner responds that the ALJ properly relied on the Guidelines – not the vocational expert's testimony – in determining that plaintiff was capable of performing a significant number of jobs in the national economy. (Dkt. No. 12 at 5-6.) The Commissioner contends that although the Appeals Council cited the vocational expert's testimony, it did not rely on that testimony to support its step five finding. According to the Commissioner, the Appeals Council determined that although the plaintiff's non-exertional limitations reduced the range of work at the medium exertional level, they were not severe enough to preclude use of the Guidelines. *Id.* The Court disagrees with the Commissioner.

As the plaintiff points out, there are three situations where the adjudicator must address whether vocational expert testimony is necessary to accompany the use of the Guidelines as a "framework" for decision-making:

> 1. Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the

appropriate rule in Tables No. 1, 2, or 3 would not be affected.

2. Where it is clear that additional limitations or restrictions have significantly eroded the exertional job base set by the exertional limitations alone, the remaining portion of the job base will guide the decision.

3. Where the adjudicator does not have a clear understanding of the effects of additional limitations on the job base, the services of a [vocational expert] will be necessary.

SSR 83-14. According to SSR 83-14, vocational expert testimony is necessary under the second and third situations either to determine whether vocational expert testimony is needed at all or because the vocational expert testimony itself is needed. The Commissioner argues that (as in the first situation) vocational expert testimony was not necessary because the Appeals Council "found that Plaintiff's non-exertional impairments were not severe enough to significantly limit the range of work permitted by the Plaintiff's exertional limitations." (Dkt. No. 12 at 5.)

Although the Appeals Council recognized that plaintiff's non-exertional limitations do not allow him to perform the full range of the medium exertional level, there is no indication that the Appeals Council considered whether plaintiff's non-exertional limitations significantly limit the range of work at the medium exertional level. As the Ninth Circuit has recognized, significant non-exertional impairments, such as the inability to tolerate dust or gases, may make reliance on the guidelines inappropriate. *See Desrosiers,* 846 F.2d at 577; *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Allen v. Sec'y of Health & Human Serv.*, 726 F.2d 1470, 1472 (9th Cir. 1984)(remanding "where the ALJ applies the guidelines without considering the restrictions on available jobs caused by the claimant's inability to tolerate dust or fumes in the workplace environment). Because the Appeals Council failed to make any

findings about erosion of the occupational base, the Appeals Council did not meet its burden. Furthermore, as plaintiff's brief notes, the Appeals Council's statement that it was using the Guidelines as a framework for decision making does not indicate that it determined that vocational expert testimony was not needed.   Rather, the Appeals Council appears to have used the Guidelines as a framework with vocational expert testimony in finding that the plaintiff is capable of performing the jobs of janitor and newspaper inserter.   In such cases, the Appeals Council must provide a statement regarding the incidence of such work.   *See* SSR 83-14 and 83-12 ("Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include . . . a statement of the incidence of such work . . .").   Because the record does not contain any information regarding the number of janitor or newspaper inserter jobs that exist, the Appeals Council did not meet its burden. Accordingly, the Appeals Council's determination that plaintiff is not disabled under Rule 203.28 is vacated.   On remand, the Commissioner must consider the extent of any erosion of the occupational based caused by plaintiff's non-exertional limitations.   If the Commissioner finds that the occupational base has been eroded such that the Guidelines are inapplicable, the Commissioner should solicit specific testimony on the matter from a vocational expert.

   B.  *Evaluation of Medical Evidence*

   As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."   *Magallanes*, 881 F.2d at 751; 20 C.F.R. § 404.1527(d)(1)-(2).   "Likewise, greater weight is accorded to the opinion of an examining physician than a non examining physician."   *Andrews*, 53 F.3d at 1041.   However,

under certain circumstances, a treating or examining physician's opinion can be rejected, whether or not that opinion is contradicted by other medical evidence of record. *Magallanes*, 881 F.2d at 751. The Commissioner must give clear and convincing reasons for rejecting a treating or examining physician's opinion if that opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. Reddick, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (*citing Magallanes*, 881 F.2d at 751). The Commissioner must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id.*

1.  *Lester Pittle, M.D.*

Lester Pittle, M.D., has been plaintiff's primary care provider since February 2004. (AR 281-338, 422-39, 505-17.) In a chart note dated October 17, 2007, Dr. Pittle opined that plaintiff was not employable, stating, "I held out hope that with proper treatment he may become employable in the future although I agree that he isn't now given the totality of his illnesses." (AR 513.) Dr. Pittle also noted that plaintiff's physical symptoms "may indeed resolve after interferon treatment and full implementation of a gluten free diet." *Id.* The ALJ assigned little weight to Dr. Pittle's opinion because (1) it was not supported by citation to objective medical evidence, (2) it lacked specificity to render it substantive, and (3) Dr. Pittle indicated that plaintiff's physical symptoms may resolve after implementation of his recommended treatments. (AR 29.) The Appeals Council adopted the ALJ's analysis,

agreeing with the specific rationale provided in the hearing decision. (AR 11-12.) Plaintiff asserts that the ALJ did not give specific and legitimate reasons for rejecting the opinions of Dr. Pittle. (Dkt. No. 11 at 16-18.) He contends that the ALJ should not have rejected Dr. Pittle's opinion because it was not supported by citation to objective medical evidence without first recontacting Dr. Pittle. *Id.* The Commissioner responds that the ALJ properly rejected Dr. Pittle's opinion as his medical reports did not document objective findings to support his opinion. (Dkt. No. 12 at 6-10.) The Commissioner further contends that the ALJ had no duty to recontact Dr. Pittle because the record was not inadequate to allow for proper evaluation of the evidence. *Id.* at 8.

A treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The ALJ may properly disregard a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Barnhart*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). "When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Here, the ALJ properly discounted Dr. Pittle's opinion because it was unsupported by any objective findings. Although the administrative record includes medical records from Dr. Pittle, the ALJ found no objective medical evidence to support Dr. Pittle's conclusion that plaintiff is unemployable. As the ALJ notes, Dr. Pittle indicates an ongoing diagnosis of chronic hepatitis C, but reports that his hepatitis C is asymptomatic and no treatment has been done. (AR 23, 31, 509, 511.) Additionally, Dr. Pittle's recent treatment notes indicate that plaintiff has denied hopelessness or suicidal

ideation, and that he has normal insight and judgment. (AR 24, 509.) While Dr. Pittle opined that plaintiff is unemployable, there are no clinical findings or test results which support this opinion.

Plaintiff contends that because the ALJ found Dr. Pittle's opinion was not supported by citation to objective medical evidence, he was required to recontact Dr. Pittle for clarification of the reasons for his opinion. (Dkt. No. 11 at 17-18.) However, as the Commissioner asserts, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); 20 C.F.R. §§ 404.1512(e), 416.912(e). When the ALJ finds the record adequate to make a determination regarding the claimant's disability, he does not have a duty to recontact the doctors. *Bayliss*, 427 F.3d at 1217. In this case, the available evidence in the record was adequate for determining the merits of the disability claim. Accordingly, the ALJ was not required to recontact Dr. Pittle.

2. *W. Jaime Moss, LMHC, CDP, and John Shriner, MSW, MHP*

W. Jaime Moss, LMHC, CDP, was plaintiff's treating mental health counselor at Sound Mental Health from May 17, 2006, through January 4, 2008. (AR 416, 466-504.) On September 17, 2007, he wrote a letter indicating that plaintiff's mental health symptoms impacted his ability to appropriately function in society, noting that plaintiff "isolates himself going out only when necessary, has difficulty relating to others, has periods of depression is unmotivated and feels hopeless, sometimes has difficulty controlling his thoughts and his mind is extremely busy keeping him from sleeping." (AR 416.) Mr. Moss opined that plaintiff "would be unable to hold a job and has considerable personal work to do before he can become

a contributing member of society." (AR 416.)

John Shriner, MSW, MHP, began seeing plaintiff at Sound Mental Health on July 21, 2008. (AR 448-54.) On December 1, 2008, he completed a Department of Social and Health Services Psychological/Psychiatric Evaluation in which he opined that plaintiff has marked limitations in his ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, and respond appropriately to and tolerate the pressure and expectations of a normal work setting. (AR 518-522.) He explained that when plaintiff's anxiety or hypomania are active, plaintiff is unable to exercise judgment or maintain continuous performance. (AR 520.) In addition, Mr. Shriner notes that plaintiff's bipolar disorder causes him to isolate, and prevents him from interacting with others and receiving instruction or criticism. *Id.*

The ALJ assigned these opinions little weight, finding them "inconsistent with the record," particularly in regard to the activities plaintiff has been involved with. (AR 30.) For example, the ALJ noted "the record evidences in the months prior and subsequent to September 2007 the claimant was actively engaged in various social activities/communication with others, e.g., his 'fans' via the internet, while performing in public venues such as Pike Place Market and churches, and while granting several interviews with radio stations." (AR 30, 26-27.) The ALJ further found that plaintiff's "reading and hours of research suggest normal cognitive functioning." (AR 30.) The ALJ also found there was no objective medical evidence supporting such conclusions or clear documentation of episodes of hypomania or anxiety beyond the claimant's subjective allegations. *Id.* Finally, the ALJ noted that the RFC "adequately addresses any mental functioning limitations by restricting the claimant to

superficial social interaction with others." *Id.*

The Appeals Council agreed with the specific rationale provided in the hearing decision for the limited weight given to the opinions of Mr. Moss and Mr. Shriner. (AR 11-12.) Specifically, the Appeals Council agreed that Mr. Moss's opinion that plaintiff would be unable to hold a job was "inconsistent with his treatment notes showing significant activities of daily living." (AR 11.) In addition, the Appeals Council agreed with the ALJ's decision that Mr. Shriner's opinion that plaintiff would have significant mental work-related limitations was "inconsistent with the claimant's significant activities of daily living and is unsupported by objective evidence." (AR 12.)

Plaintiff argues that the Commissioner failed to properly consider Mr. Moss's and Mr. Shriner's opinions. (Dkt. No. 11 at 18.) The plaintiff "does not dispute that he engaged in all of the activities cited by the ALJ," but he contends that "these activities do not show he was functioning better than observed by Mr. Moss and Mr. Shriner." (Dkt. No. 11 at 22.) Plaintiff further asserts that, contrary to the ALJ's decision, the record shows that plaintiff had observed signs of mania and anxiety. *Id.* 23.

In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p. Less weight may be assigned to the opinions of other sources than acceptable medical sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement

to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* *See also Smolen*, 80 F.3d 1288-89 (ALJ should provide germane reasons as to each lay witness).

Neither Mr. Moss nor Mr. Shriner are regarded as acceptable medical sources under Social Security regulations. 20 C.F.R. § 404.1513. Accordingly, their opinions must be given the weight of lay testimony. The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In this case, the ALJ stated that she gave the opinions of Mr. Moss and Mr. Shriner little weight because they were inconsistent with the record, specifically noting plaintiff's significant activities of daily living. (AR 30). Rather, the ALJ assigned significant weight to the opinion of clinical psychologist Lisa Cowden, Ph.D., who performed a psychological evaluation of the plaintiff. (AR 29, 272-74.) She indicated that the plaintiff demonstrated abstract thinking, good remote recall, fair recent recall, fair immediate memory, good fund of knowledge, good social judgment, and good concentration. (AR 272-74.) In addition, as the Appeals Council

points out, she stated that "[w]ith successful mental health treatment he may eventually benefit from [vocational rehabilitation services]," (AR 274), "but she did not state that the claimant currently cannot work" (AR 11). The ALJ also assigned significant weight to the state agency psychological consultant Alex Fisher, Ph.D., who opined that plaintiff had "no limitations," and that his "[activities of daily living] statements support the notion that he remains capable of carrying out work instructions with reasonable consistency." (AR 29, 237-54.)

The role of this Court is limited. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954; see also Batson, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. The ALJ gave specific and germane reasons for giving little weight to the opinions of Mr. Moss and Mr. Shriner.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with the Court's instructions.

DATED this 1st day of April, 2010.

Mary Alice Theiler
United States Magistrate Judge